IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WILSPEC TECHNOLOGIES, INC.,     ) | |
|                                        ) | |
|         Plaintiff,             ) | |
|                                        ) | |
| v.                                     ) | Case No. CIV-06-818-L |
| DUNAN HOLDING GROUP CO.    ) | |
| LTD., formerly known as DUNAN    ) | |
| GROUP CO. LTD., formerly known  ) | |
| as ZHEJIANG DUNAN GROUP     ) | |
| CO. LTD., a Chinese corporation,   ) | |
|         Defendant.           ) | |

# **ORDER**

Plaintiff, Wilspec Technologies, Inc., designs, manufactures, and sells parts for air conditioning units. On November 20, 2002, plaintiff entered into a contract with defendant's predecessor in interest, a Chinese company doing business as Zhejiang DunAn Group Co., Ltd. Pursuant to the contract, defendant was to manufacture various heating ventilating and air conditioning ("HVAC") parts for sale by plaintiff throughout North America. On March 31, 2006, plaintiff filed a petition in the District Court for the County of Oklahoma seeking damages for breach of contract, tortious interference with contractual and business relations and prospective economic advantage, and violation of Oklahoma's Deceptive Trade Practices Act. Thereafter, defendant removed the case to this court and filed a counterclaim seeking damages for breach of contract, unfair competition under the

Lanham Act, injurious falsehood, unfair competition, and violation of Oklahoma's Deceptive Trade Practices Act.

This matter is before the court on Defendant's Motion for Partial Summary Judgment. Defendant seeks a ruling that plaintiff is not entitled to recover lost profits beyond the three-year term of the parties' agreement. Defendant also seeks judgment in its favor on plaintiff's tortious interference claims. Summary judgment is appropriate if the pleadings, affidavits, and depositions "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any doubt as to the existence of a genuine issue of material fact must be resolved against the party seeking summary judgment. In addition, the inferences drawn from the facts presented must be construed in the light most favorable to the nonmoving party. Board of Education v. Pico, 457 U.S. 853, 863 (1982). Nonetheless, a party opposing a motion for summary judgment may not simply allege that there are disputed issues of fact; rather, the party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). *See also*, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). In addition, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion,

against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The undisputed facts establish that the parties entered into an agreement on November 20, 2002. Exhibit 1 to Defendant's Motion for Partial Summary Judgment ("Defendant's Motion"). Under the terms of the agreement, defendant was to provide HVAC parts, including service and reversing valves, to plaintiff, who was granted exclusive rights to sell the parts in the North American market. Id. at ¶ 3. The contract provided that it was effective from November 20, 2002 and would "continue for three (3) years." Id. at 1. In addition, the parties agreed that the contract "will automatically extend for one-year (1) periods if neither party takes exception to this clause before six months (6) prior to the scheduled expiration." Id. at ¶ 14. The termination paragraph also provided that "[i]f the Agreement is terminated by DUNAN for any reason, DUNAN shall be required to maintain pricing, service, performance and quality levels to WILSPEC so customers *with existing quotations, purchase orders and/or supply agreements* may be served." Id. (emphasis added). Plaintiff concedes that the contract terminated on November 20, 2005 because the parties could not agree on the terms of a new contract. Exhibit 2 to Defendant's Motion at 7.

Plaintiff asserts that defendant breached the contract in multiple ways, which defendant contests, and which are not at issue in this motion. What is at issue is

whether plaintiff can obtain lost profits based on collateral contracts it had with HVAC manufacturers after the contract between plaintiff and defendant terminated. Plaintiff has submitted an expert report requesting profits for lost sales of service or reversing valves to ten named customers: ClimateMaster, Goodman, Lennox, Rheem, York, Bard, Dometic, Florida Heat Pump, First Co., and Friedrich. Exhibit 3 to Defendant's Motion. The record establishes that plaintiff had no contracts with six of the companies: Bard, Dometic, Florida Heat Pump, First Co., Rheem, and Friedrich.[1] Plaintiff and ClimateMaster entered into a three-year supply agreement on December 11, 2003; during the term of the contract, ClimateMaster was to purchase 100 percent of products such as reversing valves from plaintiff. Exhibit 4 to Defendant's Motion. Goodman purchased valves from its suppliers, including plaintiff, on a purchase order basis, which "doesn't guarantee anything beyond that purchase order." Exhibit 5 to Plaintiff's Response at 95. The record does not reflect that Goodman had an existing purchase order with plaintiff as of November 20, 2005. Indeed, George Clowtis of Goodman testified that Goodman stopped buying service valves from plaintiff during the first quarter of 2005 because plaintiff was unable to provide a sufficient supply. Id. at 59. On September 13, 2004, plaintiff entered into an agreement to provide Lennox with 100 percent of its requirements for service valves. Exhibit 8 to Defendant's Motion. The agreement was to

---

[1] Exhibit 7 to Plaintiff's Response and Objection to Defendant's Motion for Partial Summary Judgment at 20 ("Plaintiff's Response"); Exhibit 8 to Plaintiff's Response at 18; Exhibit 11 to Plaintiff's Response at 67; Exhibit 13 to Plaintiff's Response at 32.

commence on October 1, 2004 and to terminate on December 31, 2006. Id. at 1. Lennox, however, terminated the agreement on February 2, 2005. Exhibit 9 to Defendant's Motion; Exhibit 10 to Defendant's Motion at 20. York and plaintiff entered into a two-year agreement on February 13, 2004; under the terms of the contract, York was to provide plaintiff with a twelve-month blanket purchase order for its expected annual needs. Exhibit 12 to Defendant's Motion. The agreement remained in effect on November 20, 2005. Exhibit 3 to Plaintiff's Response at 106.

While defendant does not dispute that plaintiff is entitled to seek lost profits on its breach of contract claim, it asserts that plaintiff may not recover such damages beyond November 20, 2005, the termination date of the contract.[2] Oklahoma law provides that

> loss of future or anticipated profit – *i.e.* loss of expected monetary gain – is recoverable in a breach of contract action: 1) if the loss is within the contemplation of the parties at the time the contract was made, 2) if the loss flows directly or proximately from the breach – i.e. if the loss can be said to have been caused by the breach – and 3) if the loss is capable of reasonably accurate measurement or estimate.

Florafax Int'l, Inc. v GTE Market Resources, Inc., 933 F.2d 282, 292 (Okla. 1997). Regardless, however, "no party to a contract may recover more in damages for a breach of the contract than might have been gained by full performance." Id. at 294-

---

[2]Defendant's motion does not address the damages available to plaintiff on its remaining claims. The court's ruling, therefore, should not be read as limiting plaintiff's proof with respect to its claims for tortious interference or violation of the Oklahoma Deceptive Trade Practices Act.

95.  In this case, defendant agreed to provide parts to plaintiff for a term of three years and for such time thereafter as necessary to supply "customers with existing quotations, purchase orders and/or supply agreements".  Exhibit 1 to Defendant's Motion at ¶ 14.  Based on the undisputed facts, only two companies – ClimateMaster and York – had existing supply agreements with plaintiff when the DunAn contract expired.  Thus, as to those customers, defendant's contractual obligations continued until those agreements terminated: December 11, 2006 for ClimateMaster and February 13, 2006 for York.  With respect to the remaining customers, plaintiff may seek lost profits up to November 20, 2005 for its breach of contract claim.[3]  To this limited extent, defendant's motion for summary judgment is granted.

The court, however, denies defendant's motion for judgment on plaintiff's tortious interference claims.  The elements of a claim for tortious interference with prospective economic advantage are "the existence of a valid business relation or expectancy, knowledge of the relationship or expectancy on the part of the interferer, an intentional interference inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the party whose relationship has been disrupted."  Boyle Servs., Inc. v. Dewberry Design Group, Inc., 24 P.3d 878, 880 (Okla. App. 2001) (*quoting* Lakeshore Community Hosp. v. Perry, 538 N.W.

---

[3]Whether plaintiff can prove its entitlement to such damages and the amount of those damages present genuine issues of material fact that cannot be resolved on summary judgment. The court therefore makes no ruling regarding whether the "Meeting Memos" modified the parties' contract and, if so, the effect of those modifications.

2d 24, 27 (Mich. App. 1995)). The elements of a claim for malicious interference with contract or business relations similarly require proof that defendant interfered with plaintiff's business or contractual rights; the interference was not justified, privileged, or excusable; and plaintiff was damaged as a result of the interference. *See* Gabler v. Holder & Smith, Inc., 11 P.3d 1269, 1278 (Okla. App. 2000). As plaintiff has presented sufficient evidence to withstand summary judgment on these claims and defendant has failed to prove that it is entitled to judgment as a matter of law, summary judgment is not appropriate. *See* Fed. R. Civ. P. 56(c).

Thus, Defendant's Motion for Partial Summary Judgment (Doc. No. 61) is GRANTED in part and DENIED in part.

It is so ordered this 20th day of June, 2008.

_____
TIM LEONARD
United States District Judge